J-S76044-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: T.L.W., JR. & T.M.W. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: T.W., NATURAL FATHER | No. 1374 WDA 2014 |

Appeal from the Order entered July 23, 2014,
in the Court of Common Pleas of Lawrence County, Orphans'
Court, at No(s): Nos. 20001 of 2014 O.C.A.,
20002 of 2014 O.C.A.

BEFORE:   FORD ELLIOTT, P.J.E., PANELLA, and OLSON, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED JANUARY 13, 2015**

T.W., ("Father"), appeals from the order dated and entered on July 23, 2014, that granted the petition filed by the Lawrence County Children and Youth Services ("CYS" or the "Agency") to involuntarily terminate his parental rights to his minor, male child, T.L.W., Jr., born in July of 2007, and his minor, female child, T.W., born in August of 2006 (the "Children"), pursuant to Section 2511(a)(8) and (b) of the Adoption Act, 23 Pa.C.S.A. § 2511(a)(8) and (b).[1]  We affirm.

The trial court ably and adequately set forth the factual background and procedural history of this appeal, which we adopt herein.  On January 13, 2014, CYS filed a petition to involuntarily terminate Father's parental rights pursuant to Section 2511(a)(8) and (b).  The trial court held

---

[1] On July 23, 2014, the trial court also involuntarily terminated the parental rights of the Children's mother, K.K. ("Mother") pursuant to Section 2511(a)(8) and (b).  Mother does not challenge the termination of her parental rights to the Children, nor is she a party to this appeal.

evidentiary hearings on the petitions on February 28, 2014 and April 24, 2014.

At the hearing on February 28, 2014, CYS presented the testimony of Richard DiBello, Jr., the caseworker assigned to the family. N.T., 2/28/2014, at 5. CYS also presented the testimony of Brian E. Dick, who is employed by Family Pathways and operates the Kids in Common Program in New Castle, Pennsylvania. *Id.* at 55. Finally, CYS presented the testimony of Cathy McKissick, who is employed as the foster care director by Cray Youth Family Services, a non-profit social service agency. *Id.* at 66-67. At the hearing on April 24, 2014, CYS presented the expert testimony of Kirk Lunnen, Ph.D., a licensed clinical psychologist. N.T., 4/24/2014, at 5-9. Father testified on his own behalf. *Id.* at 21.

On July 23, 2014, the trial court entered its order involuntarily terminating Father's parental rights pursuant to Section 2511(a)(8) and (b). On August 22, 2014, Father timely filed a notice of appeal, along with a concise statement or errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

In his brief on appeal, Father raises three issues, as follows:[2]

---

[2] We observe that Father subtly changed the wording of the issues he presents on appeal from those issues presented in his Rule 1925 concise statement, but we find that he sufficiently preserved his issues for our review. *Cf. Krebs v. United Refining Company of Pennsylvania*, 893 A.2d 776, 797 (Pa. Super. 2006) (stating that any issue not set forth in or suggested by an appellate brief's statement of questions involved and concise statement is deemed waived).

Should [Father's] parental rights [] be terminated where the totality of the circumstances indicates that [he] made a sincere and genuine effort to maintain a relationship with [the C]hildren, even if it was not completely or perfectly done?

Should [Father's] parental rights [] be terminated where the totality of the circumstances in which [Father] found himself indicate limited resources and limited abilities?

Should [Father's] parental rights [] be terminated where the totality of the circumstances indicate that the [A]gency offered no resources to [Father] of which he could have availed himself in order to improve his parenting abilities?

Father's Brief, at 5.

Father argues that the trial court failed to consider his individual circumstances, *inter alia*, his lack of finances and resources and his learning disability, when it terminated his parental rights to the Children. Specifically, Father complains that the trial court failed to consider that he has a continual lack of funds and transportation, and that he did not have resources made available to him. Father asserts that the trial court failed to consider that he made his decisions based on the limited resources and abilities he had available to him. He also contends that the trial court failed to consider his learning disability.[3] Father urges that the evidence could not be clear and convincing to support the termination of his parental rights unless the trial court considered the totality of his circumstances. Father claims that the totality of his circumstances were that he was impoverished, isolated, and learning disabled.

_____

[3] Father testified that he has a learning disability regarding his ability to spell words. N.T., 4/24/2014, at 41.

- 3 -

We review an appeal from the termination of parental rights under the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. ***In re: R.J.T.***, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. ***Id.***; ***R.I.S.***, 36 A.3d 567, 572 (Pa. 2011) (plurality opinion). As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. ***Id.***; ***see also Samuel Bassett v. Kia Motors America, Inc.***, 34 A.3d 1, 51 (Pa. 2011); ***Christianson v. Ely***, 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. ***Id.***
>
> As [our Supreme Court] discussed in ***R.J.T.***, there are clear reasons for applying an abuse of discretion standard of review in these cases. [The Pennsylvania Supreme Court] observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. ***R.J.T.***, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead [an appellate court] must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. ***In re Adoption of Atencio***, 650 A.2d 1064, 1066 (Pa. 1994).

***In re Adoption of S.P.***, 47 A.3d 817, 826-827 (Pa. 2012).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. **In re R.N.J.**, 985 A.2d 273, 276 (Pa. Super. 2009).

Moreover, we have explained:

> [t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

**Id.**, *quoting* **In re J.L.C.**, 837 A.2d 1247, 1251 (Pa. Super. 2003).

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of Section 2511(a). **See In re B.L.W.**, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). The trial court focused on Section 2511(a)(8), which provides, in relevant part:

> **(a) General rule**.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> * * *
> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

23 Pa.C.S.A. § 2511.

There is no dispute that the Children were out of Father's care for more than twelve months at the time of the hearing. The Children came under CYS' care on April 25, 2012, and the hearing on the termination

- 5 -

petition, filed on January 13, 2014, was held on February 28, 2014. Trial Court Opinion, 7/23/2014, at 5. Thus, as this Court has explained,

> [o]nce the 12–month period has been established, the court must next determine whether the conditions that led to the child's removal continue to exist, despite the reasonable good faith efforts of [the Agency] supplied over a realistic time period. Termination under Section 2511(a)(8) does not require the court to evaluate a parent's current willingness or ability to remedy the conditions that initially caused placement or the availability or efficacy of [the Agency] services.

*In the Interest of K.Z.S.*, 946 A.2d 753, 759-760 (Pa. Super. 2008), *quoting* *In re Adoption of K.J.*, 936 A.2d 1128, 1133 (Pa. Super. 2007).

After our careful review of the record in this matter, we find that the trial court's credibility and weight determinations are supported by competent evidence in the record. *In re Adoption of S.P.*, 47 A.3d at 826-827. The trial court properly considered the history of the case, including Father's neglect as a parent to the Children, and his failure to complete the objectives of the permanency plan, and determined that he would not remedy his failure to parent. Trial Court Opinion, 7/23/2014, at 12. Father failed to complete his parenting capacity evaluation in August 2013, cancelling the three appointments that were scheduled for him. *Id.*

The trial court also considered the best interests of the Children under Section 2511(a)(8). The trial court stated that Father attended only 52% of his scheduled visits, missed visits with the Children without contacting CYS, and, therefore, caused the Children to experience emotional upset. Trial Court Opinion, 7/23/2014, at 12. The trial court rejected Father's

- 6 -

explanation concerning his lack of transportation, stating that there is public transportation that he could have used to attend the visits. *Id.* Further, the trial court found that Father's visits with the Children were not productive interactions, because Father had no planned activities for the Children and failed to follow-up on discussions concerning the Children's health, school, and outside activities. *Id.* at 12-13. The trial court cited Father's failure to attend the Children's soccer games, when invited. *Id.* at 13. He also did not attend their scheduled surgeries and then cancelled the supervised visitation that followed those surgeries.[4] *Id.* Moreover, on another occasion, when the visitation coordinator went to Father's home to pick up the Children, Father was unsure of his daughter's whereabouts. *Id.*

The trial court also found that the behavior of the Children greatly improved since they first came into care. *Id.* at 9. When CYS first assumed the Children's care, they would chew on non-food items and engage in disruptive behavior. *Id.* The trial court found that the Children love living with their foster parents, to whom they refer as "Mommy" and "Daddy," and that they are involved in numerous activities including church activities, soccer, and an afterschool program. *Id.* The trial court found that the Children have a greater attachment to their foster family than to their natural parents. *Id.*

---

[4] The Children had adenoidectomies. N.T., 4/24/2014, at 27.

- 7 -

Father cannot now shift the blame to CYS for his failure to parent the Children. Accordingly, we find that the trial court's determinations regarding Section 2511(a)(8) are supported by sufficient, competent evidence in the record.

After we determine that the requirements of Section 2511(a) are met, we proceed to review whether the requirements of Section 2511(b) are satisfied. **See In re Adoption of C.L.G.**, 956 A.2d 999, 1009 (Pa. Super. 2008) (*en banc*). Section 2511(b) provides:

> **(b) Other considerations.**--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6), or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(b). This Court has stated that the focus in terminating parental rights under Section 2511(a) is on the parent, but it is on the child pursuant to Section 2511(b). **Id.** at 1008.

In reviewing the evidence in support of termination under Section 2511(b), our Supreme Court recently stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." **In re K.M.**, 53

- 8 -

A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], [our Supreme] Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re: T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

Here, the trial court found:

[T]he [C]hildren are thriving in the care of the foster parents. The foster parents are satisfying all of the developmental, physical and emotional needs of the [C]hildren. The [C]hildren refer to their foster parents as "Mommy" and "Daddy" and do not like to be away from their foster parents. It is apparent that the foster parents provide the [C]hildren with the appropriate love and affection and attention that the [C]hildren deserve. The [trial court] finds that the primary emotional attachment of the [C]hildren is with the foster parent and not with the natural parents. It is held that whether a child's primary emotional attachment is with the foster parent rather than a birth parent is a significant factor in evaluating the child's developmental and emotional needs and welfare. *In Re: K.Z.S.*, 946 A.2d 753, 764 (Pa. Super. 2008); *In the Interest of: K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). The [trial court] finds that terminating the natural parents' parental rights is clearly in the [C]hildren's best interests.

Trial Court Opinion, 7/23/2014, at 15.

The trial court found that the foster parents, not Father, have provided for the Children's developmental, physical, and emotional needs and welfare, and that Father will not be able to provide for their needs. Trial Court Opinion, 7/23/2014, at 14. Further, there was sufficient, competent evidence from which the trial court properly found that the Children's primary attachment is with the foster parents, and there is no bond between

- 9 -

the Children and Father. *Id.* We have stated that, in conducting a bonding analysis, the court is not required to use expert testimony, but may rely on the testimony of social workers and caseworkers. *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010). This Court has observed that no bond worth preserving is formed between a child and a natural parent where the child has been in foster care for most of the child's life, and the resulting bond with the natural parent is attenuated. *In re K.Z.S.*, 946 A.2d 753, 764 (Pa. Super. 2008). Father failed to "exhibit [the] bilateral relationship which emanates from the parent['s] willingness to learn appropriate parenting . . . ." *In re K.K.R.S.*, 958 A.2d 529, 534 (Pa. Super. 2008). Father did not put himself in a position to assume daily parenting responsibilities for the Children so that he could develop a real bond with them. Trial Court Opinion, 7/23/2014, at 14.*; see In re J.L.C.*, 837 A.2d 1247, 1249 (Pa. Super. 2003).

Father professes to love the Children. N.T., 4/24/2014, at 38. However, a parent's own feelings of love and affection for a child, alone, will not preclude termination of parental rights. *In re Z.P.*, 994 A.2d at 1121. We stated in *In re Z.P.*, a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *Id.* at 1125. Rather, "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and

fulfillment of his or her potential in a permanent, healthy, safe environment." ***In re B., N.M.***, 856 A.2d at 856.

As there is competent evidence in the record that supports the trial court's credibility and weight assessments regarding the Children's needs and welfare and the absence of any bond with Father, we conclude that the trial court did not abuse its discretion in finding that Father's appeal lacks merit as to Section 2511(b). ***See In re Adoption of S.P.***, 47 A.3d at 826-827. Accordingly, we affirm the termination order.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/13/2015